# United States Court of Appeals

## For the Eleventh Circuit

No. 02-10962

District Court Docket No.
01-00010-CR-001-WDO-5

Filed at 4:36 PM
January 2 2003
*Helen F. Newberry*
DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Nov 29, 2002

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

versus

DWIGHT ANTHONY GODDARD, a.k.a. Tony,

    Defendant-Appellant.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
    Deputy Clerk
Atlanta, Georgia

--------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Georgia

--------------------------------------------------------------

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached  opinion included herein by
reference, is entered as the judgment of this Court.

    Entered:     November 29, 2002
    For the Court:  Thomas K. Kahn, Clerk
        By:     Gilman, Nancy

ISSUED AS MANDATE
DEC 3 0 2002
U.S. COURT OF APPEALS
ATLANTA, GA.

This judgment, issued as the mandate, is made the judgment and order of the District Court.
This 7th day of January, 2002. 2003

*William L. Gowen*
UNITED STATES DISTRICT JUDGE

40

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

> FILED
> U.S. COURT OF APPEALS
> ELEVENTH CIRCUIT
> November 29, 2002
> THOMAS K. KAHN
> CLERK

No. 02-10962

D.C. Docket No. 01-00010-CR-001-WDO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWIGHT ANTHONY GODDARD,
a.k.a. Tony,

Defendant-Appellant.

Appeal from the United States District Court for the
Middle District of Georgia

(November 29, 2002)

Before CARNES, HILL and FARRIS[*], Circuit Judges.

FARRIS, Circuit Judge:

---

[*] Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

After the district court denied his motion to suppress evidence, defendant Dwight Anthony Goddard entered a conditional plea of guilty to possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  Goddard appeals the denial of his motion to suppress. We affirm.  There was probable cause to search Goddard's person incident to a lawful, warrantless arrest made in a public place.

## I

On October 26, 2000, Officer Bob Williams of the Ocmulgee Drug Task Force received information from a confidential informant that Goddard was selling crack cocaine from the trunk of a burgundy Oldsmobile in the Harrisburg area of Milledgeville, Georgia.  Officer Williams was already familiar with the defendant and his vehicle.  Since Officer Williams was involved in a separate investigation at the time he received the informant's eyewitness account, he passed this information on to Deputy Harold Hurley of the Baldwin County Sheriff's Department.

Deputy Hurley proceeded immediately to the Harrisburg area to investigate. A year beforehand, Deputy Hurley had supervised a confidential informant who had purchased crack cocaine from Goddard.  He therefore called the Sheriff's

2

Office to verify that the Dwight Anthony Goddard to whom Officer Williams referred was the same person who had sold crack to that informant. An officer verified this fact. The officer also said that, several days earlier, he had stopped the defendant in a burgundy car that matched the description of the vehicle reportedly being used to sell crack. As further confirmation, Deputy Hurley called a state probation officer who informed him that Goddard was on probation for a drug offense.

Approximately thirty minutes after the original tip had been called in by the confidential informant, Deputy Hurley arrived at the car wash purportedly owned by the defendant. Goddard was sitting outside in the company of several other men. When Deputy Hurley asked to speak with Goddard, the defendant identified himself, and then got up holding a crowbar in his hand. Deputy Hurley assured Goddard that he wouldn't need the crow bar and removed it from his hand. Deputy Hurley explained that he had received information that Goddard was in possession of a substantial amount of crack cocaine. Deputy Hurley then said that he was going to search Goddard and his car to see if there were any drugs. He told Goddard that if he had any drugs, he should say so.

At this point, Goddard's head dropped, he started breathing heavily, and he said that, yes, he did have crack in his possession. After Deputy Hurley asked

3

where it was, Goddard reached for the zipper of his top right pocket. Based on his fear that Goddard might have a weapon, Deputy Hurley advised Goddard that he would retrieve the drugs. Deputy Hurley then unzipped Goddard's pocket and pulled out a brown paper sack, which contained 93 pieces of crack cocaine.

Goddard moved to suppress the drugs taken from his pocket as the fruit of an improper, warrantless search. After holding a suppression hearing, the district court denied the motion because (1) no search had taken place since Goddard had voluntarily surrendered the drugs, and (2) even if a search had taken place, it had been supported by an exception to the warrant requirement for exigent circumstances. Goddard then entered a conditional plea of guilty.

## II

In reviewing a district court's ruling on a motion to suppress evidence, we review factual findings for clear error and the court's application of law to those facts *de novo*. *See United States v. Gordon*, 231 F.3d 750, 753-54 (11th Cir. 2000), *cert. denied*, 531 U.S. 1200 (2001). The facts are construed in the light most favorable to the prevailing party. *See id.*

Goddard contends that the district court clearly erred because (1) he was unlawfully seized, which tainted any consent to his subsequent search, and (2) no exigent circumstances justified the warrantless search of his person. His

4

assertions are, however, premised on *home search* cases entirely. Here, the search was of a person in a *public location* incident to arrest, supported by probable cause.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and further provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. This does not mean, as the defendant proposes, that all searches and seizures require the issuance of a warrant. "[O]ur Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public places. For example, although a warrant presumptively is required for a felony arrest in a suspect's home, the Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." *Florida v. White*, 526 U.S. 559, 565 (1999). In explaining this rule, the Supreme Court has drawn upon the established "distinction between a warrantless seizure in an open area and such a seizure on private premises." *Payton v. New York*, 445 U.S. 573, 587 (1980). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a *home* without a warrant are presumptively unreasonable." *Id.* at 586 (emphasis added) (citation omitted); *see, e.g., United States v. Burgos*, 720 F.2d 1520, 1525

(11th Cir. 1983). It is equally well-established that "there is nothing in [our] prior cases indicating that under the Fourth Amendment a warrant is required to make a valid arrest for a felony." *United States v. Watson*, 423 U.S. 411, 416-17 (1976); *see, e.g., United States v. Gonzales*, 71 F.3d 819, 826-27 (11th Cir. 1996); *United States v. Valdes*, 876 F.2d 1554, 1559 (11th Cir. 1989). The *Watson* Court summarized as follows:

> Law enforcement officers may find it wise to seek arrest warrants where practicable to do so, and their judgments about probable cause may be more readily accepted where backed by a warrant issued by a magistrate. But we decline to transform this judicial preference into a constitutional rule when the judgment of the Nation and Congress has for so long been *to authorize warrantless public arrests on probable cause rather than encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances*, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like.

*Watson*, 423 U.S. at 423-24 (emphasis added) (citations omitted); *see, e.g., United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982); *cf. Durden v. State*, 297 S.E.2d 237, 240 (Ga. 1982) (holding that arrests and searches, legal under federal law, are legal under state law).

The search of Goddard occurred in a public place and was supported by probable cause. There is no need to examine whether exigent circumstances also justified the issuance of a warrant. First, there is no question that the encounter

6

between Goddard and Deputy Hurley occurred in a public place: in the parking lot of a car wash, outdoors, and in full view of others. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Thus, though the threshold of a person's residence is considered under the common law to be "private" property, the same location is a "public" place where the person is exposed to public view, speech, hearing, and touch as if he had been standing completely outside of his house. *See United States v. Santana*, 427 U.S. 38, 42 (1976).

Second, there is also no question that the search of Goddard was supported by probable cause. Probable cause for a search exists when under the totality of the circumstances "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles the [informant's] tip to greater weight than might otherwise be the case." *Id.* at 234. Observations and other information supplied by officers involved in a common investigation can, taken together, create probable cause for a search. *See United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986).

7

The district court listed numerous factors supporting probable cause and exigent circumstances: (1) a reliable informant reported witnessing Goddard selling crack on the south side of Milledgeville, Georgia; (2) the informant specifically described Goddard; (3) the informant specifically described Goddard's car, a burgundy Oldsmobile Cutlass; (4) Deputy Hurley had an officer at the police station corroborate that Goddard had sold crack to a different informant on a previous occasion; (5) the officer at the station recalled that he had stopped Goddard once while Goddard was driving a burgundy car; (6) Deputy Hurley believed there was an urgent time pressure on finding Goddard because of the mobile nature of Goddard's drug trade; (7) Goddard was found outside in a parking lot, and had several means of escape, including ownership of a car and foot flight.  Although Goddard contends that these factors do not suggest exigent circumstances, he acknowledges that they support probable cause.

Deputy Hurley's removal of the drugs from Goddard's pocket for fear that Goddard might have been reaching for a weapon is best characterized as a search incident to an arrest.  "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *United States v. Robinson*, 414 U.S. 218, 234 (1973).

8

Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification. *Id.* at 235. In fact, a full search incident to a lawful arrest is *not only* a "reasonable" search under the Fourth Amendment, it is *also* an exception to the warrant requirement. *Id.* "Where the formal arrest follow[s] quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *United States v. Banshee*, 91 F.3d 99, 102 (11th Cir. 1996) ("[B]ecause there was probable cause for the arrest before the search and the arrest immediately followed the challenged search, the fact that [defendant] was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable."). There is no question that Goddard was arrested shortly after the drugs were discovered.

We reject Goddard's peculiar suggestion that once Deputy Hurley chose not to perform a *Terry v. State of Ohio*, 392 U.S. 1 (1968), frisk for weapons based on reasonable suspicion of criminal activity, he was thereafter precluded from searching Goddard for weapons and drugs based on probable cause. First, *Terry* "affords no basis to carry over to a probable-cause arrest the limitations this Court placed on a stop-and-frisk search permissible without probable cause." *Robinson*,

9

414 U.S. at 228.  Second, since it was the fact of a custodial arrest which gave rise

to the authority to search, any suggestion that Deputy Hurley exaggerated his fear

of being shot in order to search Goddard's pocket for drugs is irrelevant.  *See id.* at

236.  Third, what if Goddard *had* been armed?  When an officer has probable

cause to make an arrest in a public place, he need not be forced to choose between

exercising caution and losing the evidence specifically sought.

### III

We affirm the district court's denial of Goddard's motion to suppress the

cocaine taken from his pocket.  The evidence was procured during a search

incident to a lawful, warrantless arrest in a public place.

**AFFIRMED.**

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

10