ORIG

# UNITED STATE COURT OF MIDDLE DISTRICT OF GEORGIA

DWIGHT ANTHONY GODDARD,
    DEFENDANT

VS.

UNITED STATES OF AMERICA,
    PLAINTIFF

Filed at 8:30 Am M

DATE 5/28/04   CASE NO.

5:01-a-10-WDO

C.Munford

DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

5:04-cv-167-1-WDO

## MOTION TO SET ASIDE OR VACATE SENTENCE

COMES NOW THE ABOVED-NAMED DEFENDANT, DWIGHT ANTHONY GODDARD, IN ACCORD WITH THE RULES LAID OUT IN 28 U.S.C. § 2255 RULE 35. SEEKING TO HAVE HIS SENTENCE WHICH WAS IMPOSED ON FEBRUARY 13, 2002, SET ASIDE OR VACATED FOR THE FOLLOWING REASON:

### 1.

#### INEFFECTIVE ASSISTANCE OF COUNSEL

COUNSEL, ONE MICHAEL CHIDESTER, BAR NO: #24406, WAS INEFFECTIVE FOR ADVISING HIS CLIENT TO ACCEPT A GUILTY PLEA WITH THE STIPULATION THAT HE WOULD BE ALLOWED TO APPEAL THE DISTRICT COURT'S ORDER DENYING HIS MOTION TO SUPPRESS FROM AUGUST 14, 2001. COUNSEL THEN COMPOUNDED HIS INEFFECTIVENESS BY MIS APPLICATION OF THE LAW AND EVIDENCE IN REGARDS TO HIS CLIENT'S FOURTH AMENDMENT RIGHTS, THEREBY CAUSING HIS CLIENT TO BE UNDER A SENTENCE THAT SHOULD BE VACATED.

A CLAIM OF INEFFECTIVE ASSISTANCE PROPERLY BROUGHT UNDER § 2255.

GUERRERO v. U.S. 186 F.3d. 275, 277 (2nd Cir. 1999)

## STATEMENT OF THE CASE

THE DEFENDANT IN THIS CASE WAS ARRESTED BY BALDWIN COUNTY DETECTIVES, ON OCTOBER 26, 2000 IN MILLEDGEVILLE, BALDWIN COUNTY, GEORGIA. HE WAS SUBSEQUENTLY INDICTED ON ONE COUNT OF VGCSA, TO WIT, POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE, TO-WIT: COCAINE, A SCHEDULE II DRUG, (EX:1) THE DEFENDANT WAS ALSO UNDER STATE PROBATION SUPERVISION, WHICH AFTER A REVOCATION HEARING, SAID PROBATION WAS REVOCKED ON 5-8-01. THE DEFENDANT IS UNAWARE OF HOW HIS CASE ACTUALLY CAME TO BE UNDER THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA (DOC 1), BUT THE DEFENDANT WAS ARRAIGNED ON MAY 2, 2001, AND HE ENTERED A PLEA OF NOT GUILTY. (DOC. 6) THE DEFENDANT FILED VARIOUS DISCOVERY MOTIONS, AND THE GOVERMENT RESPONDED, PROVIDING INFORMATION REQUESTED BY THE DEFENDANT. (DOC. 14, 15, 16, 17) COUNSEL FOR THE DEFENDANT THEN FILED A TIMELY MOTION TO SUPPRESS ON JULY 2, 2001, AND HE FILED A SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THE MOTION ON JULY 9, 2001. (DOC. 21, 22) THE GOVERMENT FILED A RESPONSE TO THE MOTION (DOC. 26), AND THE COURT HELD A HEARING ON THE MOTION ON AUGUST 9, 2001. THE DETECTIVES FROM BALDWIN COUNTY TESTIFIED AT THIS HEARING AND ALSO ATTACHED TO DEFENDANT'S ORIGINAL MOTION TO SUPPRESS WAS A PORTION OF THE RECORD OF A HEARING HELD IN CONNECTION WITH A PETITION TO REVOKE APPELLANT'S STATE PROBATION IN THE SUPERIOR COURT OF BALDWIN COUNTY. (DOC. 21 - EX: A) IN THAT HEARING, THE ARRESTING OFFICER WHO LATER APPEARED AT THE HEARING TO SUPPRESS IN FEDERAL COURT TESTIFIED DIFFERENTLY CONCERNING THE ISSUES RAISED IN THE DEFENDANT'S MOTION AND THE RECORD WHICH IS SPOKEN OF HERE, SHOULD BE CLOSELY SCRUTINIZED BY THIS COURT. COUNSEL FOR THE DEFENDANT AND THE GOVERMENT STIPULATED THAT THE COURT COULD CONSIDER EVIDENCE SAID AND THAT IT WOULD BECOME PART OF THE RECORD IN THIS CASE. (DOC. 27) ON AUGUST 14, 2001, THE COURT ENTERED AN ORDER DENYING THE MOTION TO SUPPRESS EVIDENCE. (DOC. 28) SUBSEQUENTLY, COUNSEL FOR THE DEFENDANT ADVISED THE DEFENDANT TO ENTER A GUILTY PLEA, WITH A CONDITION OF THE PLEA BEING

THAT HE WAS PLEADING GUILTY BUT PRESERVING THE RIGHT TO APPEAL THE DENIAL OF THE MOTION TO SUPPRESS. (DOC. 30 - PG. 2, 3) THE PLEA AND SENTENCE ENTERED THEREON WERE TO BE DEEMED NULL AND VOID IF THE APPEAL WERE SUCCESSFUL. (DOC. 30 - PG. 3-4) THE CONDITIONAL CHANGE OF PLEA WAS ENTERED ON SEPTEMBER 13, 2001. (DOC. 31) THE DEFENDANT WAS SENTENCED ON FEBRUARY 7, 2002, AND THE JUDGEMENT AND SENTENCE WAS FILED ON FEBRUARY 13, 2002. (DOC. 35) A NOTICE OF APPEAL WAS FILED ON BEHALF OF THE DEFENDANT ON FEBRUARY 19, 2002. (DOC. 36) A TRANSCRIPT OF THE HEARING ON THE DEFENDANT'S MOTION TO SUPPRESS HELD ON AUGUST 9, 2001 WAS FILED IN THE DISTRICT COURT ON MARCH 15, 2002. (DOC. 39) AN ORDER DENYING THE DEFENDANT'S APPEAL WAS ENTERED ON NOVEMBER 29, 2002, AFFIRMING THE DISTRICT COURT DECISION DENYING THE DEFENDANT'S MOTION TO SUPPRESS. (CASE NO: 02-10962, D.C. DOCKET NO: 01-00010-CR-001-NDO) THE DEFENDANT IS PRESENTLY INCARCERATED UNDER THE SENTENCE OF THE DISTRICT COURT AND A SENTENCE IMPOSED BY THE STATE OF GEORGIA.

THE DEFENDANT ASKS THE COURT TO TAKE JUDICIAL NOTICE OF ALL PROCEEDINGS CONCERNING CASE NO: 02-10962, IN REGARDS TO ALL EVIDENCE, MOTIONS, AND DECISIONS, TO HELP THE DEFENDANT EXPLAIN ALL OF HIS FACTS AND CONCLUSIONS.

## I.

## INEFFECTIVE ASSISTANCE OF COUNSEL

COUNSEL, MICHAEL CHIDESTER, FOR THE DEFENDANT, GODDARD, WAS INEFFECTIVE FOR ADVISING HIS CLIENT TO ENTER INTO A GUILTY PLEA WITH A STIPULATION THAT THE DEFENDANT WOULD HAVE THE OPPORTUNITY TO APPEAL HIS MOTION TO SUPPRESS. HAD COUNSEL PROPERLY INVESTIGATED THE FACTS OF THIS CASE, HE WOULD HAVE UNDERSTOOD THE IMPORTANCE OF HIS CLIENT'S FOURTH AMENDMENT RIGHTS AS GUARANTEED BY THE GEORGIA CONSTITUTION ART. I, § I, P. XIII. COUNSEL FAILED TO UNDERSTAND THAT BECAUSE STATE LAW ENFORCEMENT OFFICERS ARRESTED HIS CLIENT HIS MOTION TO SUPPRESS SHOULD HAVE BEEN TAILORED TO ENCOMPASS HIS CLIENT'S LEGISTLATIVELY MANDATED RIGHTS UNDER THE FOURTH AMENDMENT UNDER THE GEORGIA CONSTITUTION, NOT THE LESS VIEWED STANDARD OF THE FEDERAL CONSTITUTION. IN GEORGIA IT IS CLEAR, THE STATE'S OWN EXCLUSIONARY RULE, MANDATES ALL EVIDENCE SEIZED BY AN ILLEGAL SEARCH OR SEIZURE MUST BE SUPPRESSED.

THE GOVERMENTS CASE-IN-CHEIF RESTED UPON THE TESTIMONY OF TWO BALDWIN COUNTY DETECTIVES, CONCERNING THE ARREST OF THE DEFENDANT ON OCTOBER 26, 2000. WHAT'S INTERESTING THIS TESTIMONY RELATED TO A STATE ARREST AND HAVING THE BROADER PROTECTION OF THE GEORGIA CONSTITUTION REGARDING FOURTH AMENDMENT PROTECTION, LET'S LOOK AT DETECTIVE HURLEY'S TESTIMONY FROM A REVOCATION HEARING HELD ON 4-20-01:

DETECTIVE HURLEY'S TESTIMONY:

THE STATE:     Q. OKAY. WHAT I WANT YOU TO DO NOW IS TELL THE COURT ABOUT THE INITIAL STAGES OF YOUR INVESTIGATION WHICH LED TO HIS ARREST. TELL THE COURT WHAT LED YOU TO THIS DEFENDANT.

A. I WAS LEAVING THE FIRING RANGE WHEN I RECIEVED A PHONECALL FROM AGENT BOB WILLIAMS WITH THE OCMULGEE DRUG TASK FORCE. HE ADVISED ME THAT HE HAD RECIEVED INFORMATION FROM A CONFIDENTIAL INFORMANT THAT STATED THAT THERE WAS A SUBTEC

...UN IN THE HARRISBURG AREA BY THE NAME OF TONY GODDARD WHO WAS IN POSSESSION OF A LARGE QUANTITY OF CRACK COCAINE. AND THIS CRACK COCAINE WAS LOCATED IN A PAPER SACK. AND AT THE TIME HE RECIEVED THE INFORMATION IT WAS IN THE TRUNK OF THE VEHICLE THAT MR. GODDARD WAS DRIVING, WHICH WAS A BURGUNDY OLDSMOBILE CUTLASS.

Q. OKAY. AND WHAT DID YOU DO WITH THAT INFORMATION?

A. I PROCEEDED IMMEDIATELY TO HEAD DOWN TO THE HARRISBURG AREA. I CALLED MY PARTNER ON THE SOUTHERNLINK, WHICH IS A RADIO WE USE. MR. -- HE WAS A DETECTIVE, LEE WILLIAMSON, HE STATED -- I ASKED HIM TO GO TO THE FILES AND SEE IF WE HAD ANY INTELLIGENCE INFORMATION ON THE SUBJECT. BEFORE HE WENT INTO THE FILE, HE STATED HE HAD STOPPED -- PREVIOUSLY HE HAD STOPPED SOMEONE FITTING THAT DESCRIPTION DOWN IN THE HARRISBURG AREA. AND THAT DURING THE CONVERSATION THEY HAD STATED THAT THEY OWNED A CAR WASH IN HARRISBURG.

Q. OKAY. DID YOU FIGURE OUT WHAT CAR WASH THAT WAS?

A. YES, I DID.

Q. WHAT WAS THE NAME OF THE CAR WASH?

A. NAME OF THE CAR WASH. ACE IN THE HOLE CAR WASH.

Q. OKAY. AND DID YOU GO TO THAT CAR WASH?

A. YES, I DID.

Q. WHAT DID YOU FIND WHEN YOU GOT THERE?

A. WHEN I FIRST INITIALLY PULLED UP, I BELIEVE, THREE PEOPLE SITTING AT THE CAR WASH. I EXITED MY VEHICLE. I ASKED TO SPEAK TO TONY GODDARD. NOBODY STEPPED UP. NOBODY SAID ANYTHING. I ASKED WHO WAS TONY GODDARD AGAIN. THERE WAS A BLACK MALE THAT WAS SITTING TO THE FURTHEST IN THE BACK IN A THERMAL SUIT. HE ASKED THE QUESTION WHY DO YOU WANT HIM? I SAID ARE YOU TONY GODDARD. HE STATED YES. AND THAT'S WHY AGAIN I ADVISED HIM THAT I NEED TO TALK TO HIM.

Q. Okay. Now when you approached Mr. Goddard, tell us again what was he wearing?

A. Mr. Goddard was wearing -- it's a thermal like suit that people usually wear -- construction worker's wear in the winter. It's like a jumpsuit where you have to step into it.

Q. Did it have pockets?

A. Yes, it did. Several pockets all around it.

Q. Now, did he approach you at anytime?

A. Yes, he did.

Q. Tell us about that?

A. I advised him that I needed to talk to him. He asked again why. I told him that if he wanted me to, you know, tell everybody why I was down there that was fine. Then he decided to get up from his seat and walk towards me. While he was walking towards me he had a crowbar in his right hand. When he came up to me, I went ahead and grabbed the crowbar and I advised him I didn't think he would need that. And I put the crowbar on the ground.

Q. At this point, did you ask him if he had drugs on him?

A. At this point, I advised him that I had received information that he was in possession of a substantial amount of crack cocaine. I then advised him that I was going to search him and search his car and see if he had any drugs. And if he would like to tell me to go ahead and tell me if he had them, that would be okay.

Q. What did he say to that?

A. At that time his head dropped, his heart started pounding very heavily. He started breathing very heavily and, he stated that, yes, he did have crack in his possession.

Q. And did he show you this crack?

A. I asked him where was the crack. He said he would get it, and he went to the zipper of his top right pocket. I advised him that I would get it due to the fact I didn't know if he had any weapons on him or anything, for my safety, so I unzipped it and pulled out a brown paper sack.

Q. Okay. And did you look inside the brown paper sack?

A. When I opened the sack I saw several suspected pieces of crack cocaine in different colored, little aggie like ..

Q. Okay. Did you count the number of crack rocks of cocaine?

A. Yes, I did.

Q. How many where there?

A. When I counted, I believe it was 93 pieces of crack cocaine.

Q. Okay. And did you also retrieve any money from this person?

A. Yes, I did.

Q. How much was that?

A. I retrieved $761.50.

Q. At this time did you take possession of the contraband?

A. Yes I did.

Q. And what did you do with it?

A. I immediately put it in my vehicle and shut my door.

Q. Did you take it to the Sheriff's Department?

A. Yes I did.

Q. And what did you do when you got there?

A. I placed it into evidence.

Q. So, it was in your care, custody and control the entire time before you put it into evidence at the sheriff's department?

A. Yes, it was.

Q. Did you arrest the defendant at this time?

A. Yes I did.

Further in the same proceeding, under cross examination by counsel for the defendant, Mr. Mack, Detective Hurley testified as follows:

MR. MACK:   Q. Now, Detective Hurley, you recieved information that Mr. Goddard was selling drugs out of the trunk of a car; correct?

A. Yes, sir.

Q. When you got to the car wash, did you see a car fitting the description that you had recieved?

A. No, I didn't see a car.

Q. Did you see Mr. Goddard selling drugs out of a car?

A. No, I didn't see Mr. Goddard selling drugs out of a car.

Q. Did you see Mr. Goddard selling drugs at all?

A. No, I didn't see Mr. Goddard, at that time, selling drugs no.

Q. Did you see Mr. Goddard engaged in any criminal activity at that time?

A. No, I didn't see Mr. Goddard engaged in any criminal activity at that time.

Q. In fact, he was just sitting at the car wash in a chair doing nothing, was'nt he?

A. YES, HE WAS.

Q. NOW, IN FACT, YOU DID'NT EVEN KNOW MR. GODDARD, DID YOU?

A. I -- I HAD PREVIOUS INFORMATION ON MR. GODDARD. SO I DID KNOW OF MR. GODDARD. I DID'NT KNOW HOW MR. GODDARD LOOKED.

Q. YOU, DID'NT KNOW WHAT HE LOOKED LIKE?

A. NO, NOT AT THAT TIME NO.

Q. YOU APPROACHED MR. GODDARD AND YOU TOLD HIM YOU WANTED TO TALK TO HIM. AND YOU TOLD HIM YOU WERE GOING TO SEARCH HIM?

A. ACTUALLY, MR. GODDARD APPROACHED ME, BUT YES. I DID TELL HIM THAT . . .

Q. HE DID'NT TRY TO FLEE? HE DID'NT TRY TO RUN OR ANYTHING?

A. NO. HE APPROACHED ME WITH A CROW BAR IN HIS HAND BUT, NO HE DID NOT TRY TO FLEE.

Q. AND YOU TOOK THE CROW BAR AND SAID HE DID'NT NEED IT, CORRECT?

A. YES, SIR.

Q. HE DID'NT STRUGGLE WITH YOU TO KEEP THE CROW BAR, RIGHT?

A. NO, HE DID NOT.

Q. HE DID'NT DO ANYTHING AT ALL EXCEPT COME NEAR YOU AND YOU ALL START TALKING ABOUT THE SITUATION YOU WERE THERE FOR, RIGHT?

A. YES, SIR.

Q. NOW, DID YOU HAVE A SEARCH WARRANT?

A. NO, SIR.

Q. DID YOU HAVE AN ARREST WARRANT FOR MR. GODDARD?

A. NO. SIR, I DID NOT HAVE AN ARREST WARRANT.

Q. Then why were you searching him?

A. Due to the fact I had probable cause from a reliable informant Mr. ... from Agent Bob Williams.

Q. You had probable cause? I mean, why do you say you have probable cause?

A. Through my knowledge, training and experience in drug activity, Mr. Goddard's name had come up before in other investigations.

Q. Okay. So, Mr. Goddard's name had come up before so that gave you probable cause to search him anytime you see him?

A. No. Not anytime I saw him. Then I recieved information from Mr. -- Agent Bob Williams that he was in possession at that time of a large quantity of crack cocaine.

Q. And you thought a large quantity of crack cocaine was in the trunk of Mr. Goddard's maroon car?

A. Yes, but to my knowledge, training and experience, it could be moved easily from a trunk to a pocket, to under the seat, to a trash can, any place.

Q. But, the information you had were that the drugs were located in the car?

A. Yes, Sir.

Q. Now, when you started talking to Mr. Goddard, was Mr. Goddard under arrest?

A. No, he was not.

Q. Was he free to leave?

A. Was he free to leave? No, he was not free to leave. It was a brief stop.

Q. BASED UPON WHAT?

A. MY ARTICULATE SUSPICION THAT HE WAS IN POSSESSION OF CRACK COCAINE.

Q. BUT YOU DIDN'T SEE HIM DOING ANYTHING WRONG?

A. No.

Q. YOU WERE JUST GOING BY WHAT YOU HEARD?

A. FROM A CONFIDENTIAL, RELIABLE INFORMANT OF MR. -- AGENT BOB WILLIAMS, YES.

Q. BUT YOU DIDN'T KNOW THAT CONFIDENTIAL INFORMANT, DID YOU?

A. No, BUT I KNOW AGENT BOB WILLIAMS.

Q. I UNDERSTAND IT, BUT YOU DON'T KNOW THE CONFIDENTIAL INFORMA

A. No, I DON'T.

Q. OKAY. SO HE'S DOING NOTHING WRONG. AND YOU HAVE ARTICULATE SUSPICION BECAUSE SOMEBODY SAID SOMETHING THAT HE MIGHT HAVE?

A. YES.

Q. IN THE TRUNK OF HIS CAR?

A. YES, THAT A CONFIDENTIAL, RELIABLE INFORMANT SAID IT. YES.

Q. AND YOU DIDN'T SEARCH THE CAR BECAUSE THERE WASN'T A MAROON CAR, WAS THERE?

A. No. NOT AT THAT TIME THERE WAS NOT A MAROON CAR.

Q. YOU DIDN'T TRY TO SET UP A DRUG BUY OR ANYTHING EITHER, DID YOU?

A. ON THAT DAY, NO. I DID NOT BUY ANY DRUGS FROM MR. GODDARD.

Q. AND YOU DIDN'T TRY TO OBTAIN A SEARCH WARRANT FOR MR. GODDARD OR MR. GODDARD'S VEHICLE?

A. No, SIR. I DIDN'T SEE ANY NEED.

(PROBATION REVOCATION HEARING TRANSCRIPT DOC. 21 - EX: A PG 21-30).

THE IMPORTANCE OF THIS TESTIMONY IS ONE SIMPLE FACT, IF COUNSEL WOULD HAVE
LITIGATED HIS CLIENT'S FOURTH AMENDMENT RIGHTS CORRECTLY, HIS CLIENT WOULD NOT
BE UNDER THIS INSTANT SENTENCE OF THE DISTRICT COURT. IN ORDER TO PREVAIL ON AN
ALLEGATION OF INEFFECTIVE ASSISTANCE OF COUNSEL, THE STANDARD OF THE TWO PRONG TEST OF CAUSE
AND PREJUDICE HAS TO BE SHOWN. UNDER STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984), "THE
PURPOSE OF THE EFFECTIVE ASSISTANCE GUARANTEE OF THE SIXTH AMENDMENT IS .... TO ENSURE
THAT CRIMINAL DEFENDANT'S RECIEVE A FAIR TRIAL". Id. AT 689

LOOKING AT THE EVIDENCE AND TESTIMONY USED IN THIS CASE, WE CANNOT
FORGET THAT THIS ARREST WAS MADE BY STATE OFFICER'S AND WITH THAT IN MIND, LOOKING AT THE SAME
EVIDENCE AND APPLYING THE STRICTER MANDATES OF GEORGIA'S MANDATED FOURTH AMENDMENT RIGHT'S
THE COURT WOULD HAVE ORDER THE SUPPRESSION OF ANY AND ALL EVIDENCE SEIZED FROM THE
DEFENDANT ON OCTOBER 26. 2006.

IN GEORGIA THE LAW IS CLEAR, " AN ARREST IS THE TAKING, SEIZING,
OR DETAINING OF THE PERSON OF ANOTHER, EITHER BY TOUCHING OR PUTTING HANDS ON HIM, OR BY ANY
ACT INDICATING AN INTENTION TO TAKE SUCH PERSON INTO CUSTODY, AND WHICH SUBJECTS SUCH
PERSON TO THE ACTUAL CONTROL AND WILL OF THE PERSON MAKING THE ARREST. IT IS SUFFICIENT
IF THE ARRESTED PERSON UNDERSTANDS THAT HE IS IN THE POWER OF THE ONE ARRESTING AND SUBM.
IN CONSEQUENCE THEREOF. THE TAKING OF ANOTHER INTO CUSTODY FOR THE PURPOSE OF INVESTIGATING
AN ALLEGED CRIME CONSTITUTES AN ARREST. CONOLY V. IMPERIAL TOBACCO CO., 63 GA. APP. 880, 885, (1),
12 S.E. 2d 398 (1940). HOWEVER, THE SUPREME COURT ALTERED THE CONOLY RULE IN TERRY V. OHIO,
392 U.S. 1, 88 S.CT. 1868 (1968)

THE GEORGIA SUPREME COURT HAS MORE CONCISELY SAID THAT "A PERSON IS UNDER ARREST WHENEVER HIS LIBERTY TO COME AND GO AS HE PLEASES IS RESTRAINED, NO MATTER HOW SLIGHT SUCH RESTRAINT MAY BE." THOMPSON V. STATE, 263 GA. 33, 426 S.E. 2d 895 (1993)

IT MUST BE REMEMBERED THAT THE FEDERAL CONSTITUTIONAL EXCLUSIONARY RULE, AS PRONOUNCED BY THE UNITED STATES SUPREME COURT, REPRESENTS THE MINIMUM CONSTITUTIONAL PROTECTION DUE TO A DEFENDANT IN A CRIMINAL CASE. OREGON V. HASS, 420 U.S. 714, 719, 95 S. Ct. 1215 (1975)

HOWEVER, A STATE COURT MAY NOT INTERPRET THE FEDERAL CONSTITUTION TO GIVE A DEFENDANT ANY GREATER RIGHT OR RIGHTS THAN THAT GIVEN BY THE INTERPRETATION OF THE FEDERAL CONSTITUTION BY THE UNITED STATES SUPREME COURT. NORTH CAROLINA V. BUTLER, 441 U.S. 369, 376, 99 S. Ct. 1755 (1979); COLEY V. STATE, 231 GA. 829, 204 S.E. 2d 612 (1974)

NEVERTHELESS, A STATE COURT MAY INTERPRET THE CONSTITUTION OF THE STATE TO GIVE A DEFENDANT BROADER PROTECTION THAN THAT PROVIDED BY THE FEDERAL CONSTITUTION AS INTERPRETED BY THE UNITED STATES SUPREME COURT. OREGON V. HASS, 420 U.S. 714, 719, 95 S. Ct. 1215 (1975); ROBERTS V. STATE, 458 P. 2d 340 (ALASKA 1969)

THIS RULE APPLIES EVEN WHEN THE WORDING OF THE STATE CONSTITUTION IS EXACTLY LIKE THE WORDING OF THE FEDERAL CONSTITUTION ON THE PARTICULAR MATTER. POPE V. CITY OF ATLANTA, 240 GA. 177, 178, 240 S.E. 2d 241 (1977); BULOVA WATCH CO. V. BRAND DISTRIBUTORS OF NORTH WILKESBORO, 206 S.E. 2d 141 (N.C. 1974)

ALSO, AS IS THE CASE HERE, "CONGRESS AND THE STATE LEGISLATURES MAY EXTEND THE EXCLUSIONARY RULE BY LEGISLATION SO AS TO GIVE A DEFENDANT IN A CRIMINAL CASE GREATER PROTECTION THAN HE IS ENTITLED TO UNDER THE FEDERAL CONSTITUTION." ALDERMAN V. UNITED STATES, 394 U.S. 165, 175, 89 S. Ct. 961 (1969)

UNDERSTANDING THIS PREMISE, LET'S LOOK AT GEORGIA'S MANDATED DEFINITION OF ARREST. UNDER O.C.G.A. § 17-4-1, ACTIONS CONSTITUTING ARREST CONSIST OF THE FOLLOWING: "AN ACTUAL TOUCHING OF A PERSON WITH A HAND IS NOT ESSENTIAL TO CONSTITUTE A VALID ARREST. IF THE PERSON VOLUNTARILY SUBMITS TO BEING CONSIDERED UNDER ARREST OR YIELDS ON CONDITION OF BEING ALLOWED HIS FREEDOM OF LOCOMOTION, UNDER THE DESCRETION OF THE OFFICER, THE ARREST IS COMPLETE.

IN ADDITION, IT HAS BEEN HELD THAT THE SEIZURE OF ONE'S PROPERTY FROM HIS IMMEDIATE PRESENCE IS THE FUNCTIONAL EQUIVALENT OF THE SEIZUR OF HIS PERSON. THIS INCLUDES THE SEIZURE AND RETENTION OF PERSONAL PROPERTY OR MONEY WHEN THE AUTHORITIES DO NOT MAKE IT ABSOLUTELY CLEAR HOW THEY PLAN TO REUNITE THE SUSPE AND HIS POSSESSIONS AT SOME TIME OR PLACE. BROWN V. STATE, 191 GA. APP. 779, 780, 383 S.E. 2d 170 (1989)

AGAIN, LOOKING AT PART OF DETECTIVE HURLEY'S TESTIMONY THE FOLLOWING QUESTIONS WERE ASKED:

Q. WHEN YOU STARTED TALKING TO MR. GODDARD, WAS MR. GODDARD UNDER ARREST?

A. NO, HE WAS NOT.

Q. WAS HE FREE TO LEAVE?

A. WAS HE FREE TO LEAVE? NO, HE WAS NOT FREE TO LEAVE. IT WAS A BRIEF STOP.

Now, UNDER THE RIGHTS GUARANTEED BY THE GEORGIA CONSTITUTION Art. 1. s.1, P XIII , THE DEFENDANT WAS UNDER ARREST WHEN HE WAS NOT FREE TO LEAVE, THAT BEING THE OFFICER'S TESTIMONY, BUT IF YOU APPLY THE FEDERAL STANDARD TO AN ~~ARREST YOU LOSE THE PROTECTION OF YOUR STATE'S RIGHTS.~~

EVEN IN GEORGIA, THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE ENUNCIATED BY THE U.S. SUPREME COURT IN UNITED STATES V. LEON IS NOT APPLICABLE IN GEORGIA IN LIGHT OF THE LEGISLATIVELY-MANDATED EXCLUSIONARY RULE FOUND IN O.C.G.A.§ 17-5-30 . GARY V. STATE . 262 GA. 573 , 422 S.E. 2d 426 (1992)

CLEARLY, HAD COUNSEL BEEN AWARE OF HIS CLIENT'S ARREST BEING MADE BY STATE OFFICER'S INSTEAD OF FEDERAL AGENTS , HE WOULD NOT HAVE INDUCED HIS CLIENT TO TAKE A PLEA WITH THE STIPULATION OF BEING ABLE TO APPEAL HIS MOTION TO SUPPRESS. HAD COUNSEL PROPERLY ATTACKED HIS CLIENT'S FOURTH AMENDMENT ISSUE'S , HIS CLIENT WOULD NOT BE ASKING THAT HIS SENTENCE BE VACATED BECAUSE OF HIS COUNSEL INEFFECTIVE PERFORMANCE.

GUILTY PLEA ADVICE WAS INEFFECTIVE ASSISTANCE BECAUSE COUNSEL RECOMMENDED GUILTY PLEA BASED ON ERRONEOUS APPLICATION OF FOURTH AMENDMENT LAW AND EVIDENCE OF PREVIOUS PLEA PROCEEDINGS INDICATED DEFENDANT WOULD NOT HAVE PLED GUILTY. U.S. V. STREATER , 70 F.3d 1314, 1322-23 (D.C. Cir. 1995)

COUNSEL'S FAILURE TO RAISE OBVIOUS AND SIGNIFICANT ISSUES WAS INEFFECTIVE ASSISTANCE BECAUSE IT WAS WITHOUT LEGITIMATE STRATEGIC PURPOSE. MASON V. HANKS 97 F.3d 887, 894 (7th Cir. 1996)

COUNSEL'S FAILURE TO CITE DIRECTLY CONTROLLING PRECEDENT WAS INEFFECTIVE ASSISTANCE BECAUSE IT WAS OBJECTIVELY UNREASONABLE AND RESULTED IN PREJUDICE TO DEFENDANT. U. S. v. WILLIAMSON, 183 F.3d 458, 463-64 (5ᵗʰ Cir. 19

## CONCLUSION

THEREFORE, THE DEFENDANT PRAYS THAT THE COURT GRANTS HIS MOTION TO VACATE OR SET ASIDE AND ORDER ANY OTHER RELIEF THE COURT DEEMS NECESSARY.

RESPECTFULLY SUBMITTED,

Dwight Goddard

DWIGHT A. GODDARD # 460291
E2-145B W.S.P. P.O. 808397
ABBEVILLE, GA 31001

THIS 25 DAY 5, 2004,
May

My Commission Expires   9/07

Dorma Co. Garnel

# Incident Report

ORI: GA0050000
Agency: BALDWIN S.O.

Page 3
Case #: 2028313

Supplemental(s):

ON 102600, R/O RECEIVED INFORMATION FROM OCMULGEE DRUG TASK FORCE AGENT BOB WILLIAMS.
WILLIAMS STATED THAT HE HAD RECEIVED INFORMATION FROM A CONFIDENTIAL INFORMANT WHO
STATED TONY GODDARD WAS IN POSSESSION OF A SUBSTANTIAL AMOUNT OF CRACK COCAINE THAT WAS
IN A BROWN PAPER SACK.   THE INFORMANT STATED THAT GODDARD WAS IN A BURGUNDY OLDSMOBILE
CUTLASS.

WHILE DRIVING DOWN IRWINTON ROAD, R/O WAS ADVISED BY DETECTIVE LEE WILLIAMSON THAT LAST
WEEK HE HAD STOPPED A VEHICLE SIMILAR TO THE ONE DESCRIBED BY WILLIAMS AND THAT A
DWIGHT ANTHONY GODDARD WAS DRIVING IT.  DETECTIVE WILLIAMSON  REMEMBERED THAT GODDARD
OWNED THE CAR WASH ON HARRISBURG ROAD.  R/O THEN REMEMBERED THAT R/O HAD AN INFORMANT
PURCHASE A SUBSTANTIAL AMOUNT OF COCAINE FROM DWIGHT ANTHONY GODDARD (AKA/ TONY) ON
090999.  REFER TO CASE NUMBER 9930186.

WHEN R/O ARRIVED AT 321 HARRISBURG ROAD (ACE IN THE HOLE CAR WASH), R/O SAW AN
INDIVIDUAL SITTING IN A CHAIR  WHO APPEARED TO BE DWIGHT ANTHONY GODDARD.  WHEN R/O
ASKED THE SUBJECT IF HIS NAME WAS "TONY", HE STATED YES AND ASKED WHY.  R/O ADVISED HIM
THAT R/O NEEDED TO TALK TO HIM.  HE AGAIN ASKED WHY.  R/O INQUIRED OF GODDARD IF HE
WANTED R/O TO DISCUSS HIS BUSINESS IN FRONT OF THE OTHER PERSONS SITTING AROUND.
GODDARD THEN APPROACHED R/O WITH A CROWBAR IN HIS RIGHT HAND.  R/O TOOK THE CROWBAR
FROM HIM.

R/O INFORMED GODDARD THAT R/O HAD RECEIVED INFORMATION THAT HE WAS IN POSSESSION OF A
SUBSTANTIAL AMOUNT OF COCAINE.  R/O THEN ADVISED GODDARD THAT R/O WAS GOING TO SEARCH
HIM AND HIS CAR  AND THAT IF HE HAD ANY DRUGS , HE COULD TELL R/O IF HE WANTED TO.
GODDARD ADVISED R/O THAT HE HAD SOME IN HIS LEFT THERMAL SUIT POCKET.  R/O UNZIPPED THE
ZIPPER AND RETRIEVED A BROWN PAPER BAG WITH NUMEROUS PIECES OF CRACK COCAINE IN COLORED
BAGGIES.

R/O ADVISED GODDARD HE WAS UNDER ARREST AND HANDCUFFED HIM.  R/O RETRIEVED MONEY FROM
GODDARD'S RIGHT THERMAL SUIT POCKET.  R/O COUNTED THE MONEY AND CRACK COCAINE AT THE
SHERIFF'S OFFICE.  R/O SEIZED $761.50 AND 93 CRACK COCAINE ROCKS INDIVIDUAL PACKAGED.

AT THE SHERIFF'S OFFICE, R/O ADVISED GODDARD OF HIS RIGHTS PURSUANT TO THE MIRANDA
DECISION.  GODDARD FREELY AND VOLUNTARILY WAIVED HIS RIGHTS AND PROVIDED R/O WITH A
WRITTEN WAIVER AND A VERBAL STATEMENT.  R/O ASKED GODDARD WHERE HE OBTAINED THE CRACK
FROM.  GODDARD STATED HE GOT IT FROM A THIRD PARTY, BUT DID NOT KNOW THEIR NAME.  NO
OTHER QUESTIONS WERE ASKED OF GODDARD.  PRESENT DURING THE INTERVIEW WAS DETECTIVE
BLAKE SWICORD.

CASE CLOSED AND CLEARED BY ARREST.

CERTIFICATE OF SERVICE

I, _Mr. Dwight A. Goddard_____, being the Petitioner, Plaintiff, in the attached Motion/Petition, do hereby depose and say that a true copy of the foregoing document was served on all involved parties by placing the same into the UNITED STATES MAIL, properly addressed, and with proper postage affixed on this _25_ day of ___May 6 5_____ ,20 _04_ .

s/ _Dwight s. Goddard_____

_Gregory G Leonard_
_Clerk of Middle Ga._
_Middle District of Georgia_
_475 Mulberry Street_
_P. O. Box 128_
_Macon, Georgia 31202-0128_

GDC# _460291_____
Johnson State Prison
Post Office Box 344
Wrightsville, GA. 31096-0344

My Commission Expires _9/07_
_Donna C Jarral_



